United States District Court
Southern District of Texas

**ENTERED**

March 28, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | Criminal Action No. H-23-565 |
| | § | |
| | § | |
| ANTONIO RAMIREZ-RAMIREZ | § | |
| | § | |
| | § | |

## FINDING OF FACT AND CONCLUSION OF LAW AND REVOCATION OF DEFENDANT'S PRETRIAL RELEASE

Pending before the Court is the Government's Motion for Revocation of Release Order (Document No. 56) as to Defendant Antonio Ramirez-Ramirez. Having considered the motion, evidence, transcript of testimony, and oral argument presented during the February 21, 2024 detention hearing and the applicable law, the Court determines the Government's motions should be granted. Accordingly, the Court now enters the following findings of fact and conclusions of law. Any finding of fact that should be construed as a conclusion of law is hereby adopted as such. Any conclusion of law that should be construed as a finding of fact is hereby adopted as such.

## I. BACKGROUND

A confidential source for the Drug Enforcement Agency ("DEA") identified Defendant Antonio Ramirez-Ramirez ("Ramirez") as part of a drug trafficking ring. Ramirez, working with two codefendants, orchestrated the sale of multiple kilograms of cocaine to a DEA Confidential Informant (the "Confidential Informant"). On May 15, 2023, Law enforcement officers seized seventeen kilograms of cocaine in an operation involving Ramirez's codefendants. On November 28, 2023, a Houston Division grand jury returned a two-count indictment against Ramirez and his codefendants for conspiracy to possess with intent to distribute a controlled substance and possession with intent to distribute a controlled substance.

On February 6, 2024, while federal agents were executing the post-indictment arrest warrant at his residence, Ramirez did not comply with the agent's commands. Ramirez retrieved a firearm, racked the slide, and pointed the firearm at agents, causing them to fear for their safety and shoot him. Additionally, Ramirez is an undocumented illegal alien in the United States and is not legally permitted to possess a firearm. Federal agents found multiple other firearms within Ramirez's home during a subsequent search warrant execution.

On February 21, 2024, a detention hearing was held, and Magistrate Judge Andrew Edison ordered Ramirez released on unsecured bond with multiple

2

conditions, including a GPS monitoring device and travel restrictions. On February 21, 2024, the United States filed its Motion for a Stay of the Magistrate Judge's decision. On February 22, 2024, this Court granted the United States' Motion for a Stay and stayed Judge Edison's order releasing the Defendant. On March 1, 2024, the Government moved to revoke Ramirez's release. The Court makes the following findings of fact based on the Pretrial Services Report ("PSR"), its addendums, and the detention hearing transcript before Magistrate Judge Edison.[1]

## II. FINDINGS OF FACT

1. Ramirez is an illegal immigrant.

2. Ramirez is a 54-year-old Mexican Citizen who possesses a Mexican passport.[2]

3. Ramirez has lived in the United States and resided in Houston, Texas, for approximately thirty years.[3]

4. Ramirez has no reported criminal history.[4]

---

[1] *Pretrial Services Report (PSR)*, Document No. 57 at 1–10; *PSR Addendum 1*, Document No. 58 at 1–2; *PSR Addendum 2*, Document No. 59 at 1–2; and *Detention Hearing Transcript*, Document No. 54 at 1–98 [hereinafter *Detention Hearing Transcript*].

[2] *Pretrial Services Report (PSR)*, Document No. 57 at 1–2.

[3] *Pretrial Services Report (PSR)*, Document No. 57 at 1.

[4] *PSR Addendum 2*, Document No. 59 at 1–2.

5.     The indictment alleges Ramirez was involved in the possession with intent to
distribute multiple kilograms of cocaine. Both counts in the indictment
involve over five kilograms of cocaine.[5]

6.     On March 9, 2023, Before the indictment, the Confidential Informant
coordinated with Ramirez to purchase multiple kilograms of cocaine from
Otoniel Ramirez-Ramirez (Ramirez's brother).[6] The Confidential Informant
met with the individuals in this case numerous times, setting up deals for large
amounts of cocaine.[7]

7.     The Confidential Informant subsequently met with Ramirez's codefendants,
resulting in a bundle of seventeen kilograms of cocaine being seized.[8] The
substance was tested to have a net weight of at least five kilograms that
contained cocaine.

8.     Following the seizure, the Confidential Informant had multiple recorded
phone calls with Ramirez. Ramirez stated his suspicion that the Confidential

---

[5] *Original Indictment*, Document No. 1 at 1–4.

[6] *Detention Hearing Transcript*, *supra* note 1 at 7:18–25.

[7] At one-point defendants in this case allegedly told the DEA informant they could provide over 100 kilograms of cocaine. *Detention Hearing Transcript*, *supra* note 1 at 8:1–25.

[8] *Detention Hearing Transcript*, *supra* note 1 at 9:5–14.

Informant had "set them up" and ultimately cut off communications with the Confidential Informant.[9]

9.    On February 6, 2024, Ramirez brandished a firearm at federal agents and refused to comply with the agents attempting to execute a post-indictment arrest warrant.[10] Ultimately, United States Marshal deputies had to discharge their weapons and shoot Ramirez to take him into custody.[11]

10.    Officers with the task force testified that they used marked police vehicles with lights and sirens on. They remained outside, announcing their presence by yelling and using public announcement ("PA") through a police vehicle before any officer attempted to make entry.[12]

11.    On February 6, 2024, a search of Ramirez's home resulted in the seizure of two handguns, a shotgun, and $56,370.00 partially wrapped in cellophane.[13]

---

[9] *Detention Hearing Transcript, supra* note 1 at 28:1–15.

[10] *Detention Hearing Transcript, supra* note 1 at 38:13–22.

[11] *Detention Hearing Transcript, supra* note 1 at 38:19–22.

[12] *Detention Hearing Transcript, supra* note 1 at 38:5–11.

[13] *Detention Hearing Transcript, supra* note 1 at 10:6–9.

## III. CONCLUSIONS OF LAW

### A.  *Standard of Review*

12.  The district court reviews a magistrate court's release order *de novo.*
     *See United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992).

13.  In reviewing a magistrate court's release order, a district court "must make an
     independent determination of the proper pretrial detention or conditions of
     release." *Id.*

14.  It is well within the district court's discretion to determine the propriety of
     pretrial release. *See United States v. Hare*, 873 F.2d 796, 798 (5th Cir.
     1989) ("Absent an error of law, we must uphold a district court's pretrial
     detention order 'if it is supported by the proceedings below'") (quoting *United
     States v. Jackson*, 845 F.2d 1262, 1263 (5th Cir. 1988)).

15.  "For pretrial detention to be imposed on a defendant, the lack of reasonable
     assurance of either the defendant's appearance or the safety of others or the
     community is sufficient; both are not required." *Rueben*, 974 F.2d at 586.

16.  "On review of release and detention orders, the district court may take
     additional evidence and may also utilize the transcript and record of the earlier
     detention hearing as the basis for findings of fact." *United States v. Boado*,
     835 F.Supp. 920, 921 (E.D. Tex. 1993) (Cobb, J.); *See Also United States v.
     Kyle,* 49 F.Supp. 2nd 526, 527 (W.D. Tex. 1999) (Garcia, J.) (holding such a

6

standard does not mandate a completely new evidentiary hearing). "The Court is entitled to rely on the evidence introduced before the Magistrate Judge." *Kyle*, F.Supp. 2nd at 527.

B. ***Flight Risk and Danger to the Community***

17. Under Title 18 U.S.C. § 3142(e)(3), there is a rebuttable presumption that the Defendant should be detained when the Defendant has been indicted and charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act.

18. Dangerousness, that is, the danger that Defendant might engage in criminal activity to the detriment of the community, must be proven by clear and convincing evidence. 18 U.S.C. § 3142(f). When the Court considers dangerousness, "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community 'refers to the danger that the defendant might engage in criminal activity to the detriment of the community.'" *United States v. Wilson*, 820 F. Supp. 1031 (5th Cir. 1993) quoting *United States v. Cook*, 880 F.2d 1158 (10th Cir. 1989).

19. The determination of whether a defendant poses a serious flight risk is made based on the preponderance of the evidence. *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985) ("[T]o order detention [based on flight risk] the

7

judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance.").

20.   In determining whether a defendant is a serious flight risk or a danger to the community and whether there are conditions of release that will reasonably assure the defendant appears at trial, the court considers: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the defendant's personal history and characteristics, including his length of residence in the community; and (4) the nature and seriousness of the danger to the community. 18 U.S.C. § 3142(g); *Rueben*, 974 F.2d at 586.

### a.   The Nature and Circumstances of the Offense Charged

21.   Ramirez is charged with two counts involving conspiracy and possession with the intent to distribute over five kilograms of cocaine. If convicted, Ramirez is facing a mandatory minimum of 120 months to life in both counts.

22.   The severity of the Defendants' potential sentences weighs heavily in favor of detention. *See United States v. Almasri*, Criminal Action No. H-07-155, 2007 U.S. Dist. WL 2964780, at *1 (S.D. Tex. Oct. 10, 2007) (Rosenthal, J.) (finding severity of potential ten-year sentences weighed in favor of detention).

8

### *b.     The Weight of the Evidence*

23.   Ramirez was allegedly involved in a drug conspiracy spanning many months and involving substantial amounts of cocaine.

24.   The investigation that spanned months was intensive and ended in the seizure of multiple kilograms of cocaine, illegally owned weapons, and large sums of cash.

25.   The evidence provided by the Confidential Informant is expansive and includes in-person meetings and recorded phone calls. Additionally, the evidence supports that Ramirez was an integral part of the drug conspiracy and was proactively involved in setting up the deal with the Confidential Informant.

26.   The government's evidence is sufficient to support Ramirez's detention pending his trial.

### *c.     Ramirez's Personal History and Characteristics*

27.   The Court must consider the history and characteristics of the Defendant to include physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug and alcohol abuse, criminal history and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g)(3)(A).

9

28.  The Government concedes, and the Court agrees, that Ramirez has some community ties, including living in the United States for about 30 years and owning a house in Houston, Texas, where he lives with his family.

29.  However, Ramirez does not have legal status in the United States, and an immigration detainer has been filed against him.[14]

30.  Additionally, Ramirez has significant ties to Mexico. His parents and numerous siblings are Mexican citizens and residents.[15]

31.  Further, pretrial services determined that the Defendant is not a suitable candidate for release on bond because of several factors, including his undocumented status in the United States, the immigration detainer lodged against him, uncorroborated personal history, and statements regarding his employment and finances.[16]

32.  The pretrial assessment determined that he is a danger to the community based on the charges in the indictment and his actions on February 6, 2024.[17]

---

[14] *PSR Addendum 1*, Document No. 58 at 3.

[15] *The Government's Motion for Revocation of Release Order*, Document No. 56 at 10 and *PSR Addendum 1*, Document No. 58 at 3.

[16] *PSR Addendum 1*, Document No. 58 at 2–3.

[17] *PSR Addendum 1*, Document No. 58 at 2–3.

10

33.    In total, Ramirez's status and ties to Mexico result in this factor favoring Ramirez's detention as a flight risk. Additionally, the PSR's findings and Ramirez's actions at the time of his arrest support the Government's contention that he is a danger to the community.

### d.    The Nature and Seriousness of the Danger to the Community

34.    The Court notes that Ramirez presents a danger to the community in multiple ways. First, he is accused of being involved in the distribution of multiple kilograms of cocaine, which alone poses a risk to the community. *See United States v. Wilson*, 820 F. Supp. 1031 (5th Cir. 1993).

35.    Additionally, Ramirez as an illegal alien, unlawfully owned and possessed at least three firearms (one of which he brandished at law enforcement).

36.    Ramirez's actions on February 6, 2024, show his willingness to threaten the use of illegal firearms when he brandished a handgun toward federal agents.[18]

37.    Accordingly, the Court finds Ramirez has not overcome the presumption in this case that he should be detained as both a flight risk and danger to the community.

---

[18] The Court notes Ramirez continues to assert that the raid was early morning, and he believed the officers were thieves. *See Defendant's Response to Government's Motion for Revocation of Release Order*, Document No. 60 at 5. However, the record shows that Ramirez was awake and preparing for work. The record also shows that this was not a covert operation. Meaning the taskforce had marked vehicles, tactical gear, riot shields, sirens, and many other indications that they were indeed law enforcement. *Detention Hearing Transcript*, *supra* note 1 at 38:5–46:10.

38.   Taken together, the severity of the punishment Ramirez may be subjected to if convicted of the charges alleged in the indictment, the evidence of Ramirez's involvement in a large-scale drug conspiracy, Ramirez's lack of legal status in the United States, and Ramirez's conduct during his arrest compel the Court's determination that Ramirez poses a significant risk of fleeing the Court's jurisdiction before trial and poses a danger to the community. The Court further finds no combination of bond conditions can ensure Ramirez's appearance or safety to the community.

## IV. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that the Government's Motion for Revocation of Release Order (Document No. 56) is **GRANTED.** The Court further

**ORDERS** that Magistrate Judge Andrew Edison's release order issued February 21, 2024, is hereby **REVERSED**. The Court further

**ORDERS** that Defendant Antonio Ramirez-Ramirez is hereby **COMMITTED TO THE CUSTODY OF THE ATTORNEY GENERAL** or his designated representative to be **DETAINED** pending trial.

SIGNED at Houston, Texas, on this **28** day of March, 2024.

DAVID HITTNER
United States District Judge

13